IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | | |
|---|---|---|
| ANNIE M. ZELLARS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | CV 113-146 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration,[1] | ) ) ) ) ) | |
| Defendant. | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Annie M. Zellars ("Plaintiff") appeals the decision of the Commissioner of Social Security (the "Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

I.     **BACKGROUND**

Plaintiff protectively applied for DIB and SSI on August 24, 2009, alleging a disability onset date of August 24, 2009. Tr. ("R"), pp. 118-29. The Social Security

---
[1] For ease of reference, the Court will hereinafter refer to the Acting Commissioner as "Commissioner."

Administration denied Plaintiff's applications initially, R. 68-79, and on reconsideration, R. 82-88. Plaintiff requested a hearing before the Administrative Law Judge ("ALJ"), R. 91-92, and the ALJ held a hearing on June 16, 2011. R. 38-67. At the hearing, the ALJ heard testimony from Plaintiff, who was accompanied by a non-attorney representative, as well as from Richard Smith, a Vocational Expert. Id. On January 5, 2012, the ALJ issued an unfavorable decision. R. 17-37.

Applying the sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has engaged in substantial gainful activity during the fourth quarter of 2009 (20 C.F.R. §§ 404.1520(b), 404.1571 *et seq.*, 416.920(b), & 416.971 *et seq.*). However, the issue is not dispositive to the outcome of this case, and the case will proceed to the next step. As there has been a continuous twelve month period(s) during which the claimant did not engage in substantial gainful activity, the remaining findings address the period(s) the claimant did not engage in substantial gainful activity.

2. The claimant has the following severe impairments: borderline intellectual functioning and obesity (20 C.F.R. §§ 404.1520(c) & 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: requires verbal prompting to learn the job and any changes to the job; would need partial physical assistance to learn the job and job changes; no dangerous conditions, and no decision making needed for the job; no reading; no driving; no math skills; and simple one and two step tasks. In light of this RFC, the claimant is capable of performing past relevant work as a box maker (D.O.T. #920.587-018) which is medium, unskilled, SVP-2 work.[2]

---

[2] Using the skill level definitions in 20 C.F.R. §§ 404.1568(a) and 416.968(a), the Dictionary of Occupational Titles lists a specific vocational preparation (SVP) time for unskilled work of 1-2. See SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000).

R. 23-31.

Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, and the ALJ concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from August 24, 2009, through January 5, 2012 (the date of the decision). R. 32. When the Appeals Council denied Plaintiff's request for review, R. 1-7, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues that the Commissioner's decision is not supported by substantial evidence because the ALJ erred (1) in her determination that she did not meet or equal Listing 12.05(C), and (2) in formulating an RFC for Plaintiff that imposed limitations incompatible with competitive work and did not include certain social limitations documented in the record. See doc. no. 18 ("Pl.'s Br."). The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should therefore be affirmed. See doc. no. 19 ("Comm'r's Br.").

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005) (*per curiam*); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Notwithstanding this measure of deference, the Court remains

obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (*per curiam*). Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

## III. DISCUSSION

Plaintiff argues that she meets or equals Listing 12.05(C) because she has a valid IQ score of seventy or less and another severe impairment. Pl.'s Br., p. 11. Plaintiff also argues the ALJ improperly formulated an RFC for Plaintiff that imposed limitations incompatible with competitive work and did not include certain social limitations documented in the record. Id. at 20.

### A. The Requirements of Listing 12.05(C).

At step three of the sequential evaluation process, the Commissioner must determine whether a claimant meets or equals a disability described in the Listing of Impairments, which describes impairments severe enough to prevent a person from performing any gainful activity. Davis v. Shalala, 985 F.2d 528, 532 (11th Cir. 1993). Plaintiff bears the burden of showing that her condition meets or equals a Listing. Castle v. Colvin, 557 F. App'x 849, 852 (11th Cir. 2014) (*per curiam*); Wilkinson *ex rel.* Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (*per curiam*). In order to show that her impairment meets a Listing, Plaintiff needs to satisfy all of the specified medical criteria; "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). "To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'" Wilson v. Barnhart, 284 F.3d 1219, 1224 (11th Cir. 2002) (*per curiam*) (citation omitted). It is axiomatic that when a claimant's condition meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d).

"Intellectual disability," as defined by Listing 12.05, "refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22."[3] 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.05. To qualify as intellectually disabled, a claimant's condition must satisfy this general diagnostic definition and also satisfy one of four criteria specified in subparts A through D of the Listing. Id. 12.00(A) (stating that an impairment must satisfy the diagnostic description and one of the four sets of criteria to qualify under Listing 12.05); see also Perkins v. Comm'r Soc. Sec. Admin., 553 F. App'x 870, 872 (11th Cir. 2014) (per curiam); Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997).

Listing 12.05(C) states: "The required level of severity for this disorder is met when . . . [there is] a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id. Thus, a claimant generally meets the Listing 12.05(C) criteria when she, in addition to satisfying the diagnostic definition, "presents a valid IQ score of 60 to 70 inclusive, and evidence of an additional mental or physical impairment that has more than 'minimal effect' on the claimant's ability to perform basic work activities." Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992). To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff needs to show that the impairment "significantly limits [her] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as

---

[3]Effective September 3, 2013, the term "mental retardation" was replaced with "intellectual disability" in the Listings. Change in Terminology: "Mental Retardation" to "Intellectual Disability", 78 Fed. Reg. 46499-01 (Aug. 1, 2013) (codified at 20 C.F.R. Parts 404 and 416).

defined in §§ 404.1520(c) and 416.920(c)." Willard v. Colvin, No. 5:12-cv-03536-JHE, 2014 WL 1664300, at *4 (N. D. Ala. Apr. 25, 2014) (citing Listing 12.00(A).)

In the context of mental disorders, the regulations provide that "since the results of intelligence tests are only part of the overall assessment, the narrative report that accompanies the test results should comment on whether the IQ scores are considered valid and consistent with the developmental history and the degree of functional limitations." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(6)(a). Likewise, the Eleventh Circuit has recognized that "a valid IQ score need not be conclusive of [intellectual disability] where the IQ score is inconsistent with other evidence in the record on the claimant's daily activities and behavior." Lowery, 979 F.2d at 837; see also Hodges v. Barnhart, 276 F.3d 1265, 1269 (11th Cir. 2001) (low IQ scores give rise to presumption of intellectual disability, but such presumption may be rebutted with evidence of daily activities that are inconsistent with diagnosis of intellectual disability); Popp v. Heckler, 779 F.2d 1497, 1499 (11th Cir. 1986) (*per curiam*) ("[IQ] test results must be examined to assure consistency with daily activities and behavior").

>B. **The ALJ's Finding at Step Three of the Sequential Process Is Not Supported by Substantial Evidence.**
>
>>1. **The ALJ Did Not Develop a Full and Fair Record Regarding Plaintiff's IQ Scores.**

A claimant has the burden of proving her disability and is responsible for providing evidence in support of her claim. Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003). Nevertheless, the ALJ has a duty to develop a full and fair record. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984); George v. Astrue, 338 F. App'x 803, 805 (11th Cir. 2009) (*per curiam*); Jenkins v. Colvin, No. CA 2:12-00465-N, 2013 WL 3465190, at *3 (S.D. Ala. July 10, 2013) (collecting cases). The ALJ has a duty to develop a record that contains sufficient

evidence to make an informed decision. Ingram v. Comm'r of Soc. Sec. Admin, 496 F.3d 1253, 1269 (11th Cir. 2007). When deciding whether remand is appropriate for development of the record, the Court should consider whether there are evidentiary gaps resulting in unfairness or clear prejudice. Salazar v. Comm'r of Soc. Sec., 372 F. App'x 64, 67 (11th Cir. 2010) (*per curiam*). Here, there are gaps in the record concerning Plaintiff's IQ scores that were not fully developed by the ALJ and which are critical to the disability determination.

In discussing Plaintiff's IQ scores, the ALJ acknowledged educational records containing a psychological evaluation completed when Plaintiff was in the ninth grade at Lincolnton High School that said Plaintiff had prior Full Scale IQ scores of sixty-nine in 1979 and sixty in 1984. R. 23 (citing R. 252-55.) Those records also showed Plaintiff had been in a resource program for the mildly mentally handicapped for ten hours per week, Plaintiff's adaptive behavior ranked in the mildly mentally handicapped to borderline range, and observations by school personnel suggested Plaintiff could not function independently in all regular classes. Id. The ALJ also acknowledged the testimony of Ms. Beth Gerrard, Plaintiff's non-attorney representative at the administrative hearing, that enrollment in the Georgia TASC program required an IQ of sixty-nine or below with accompanying deficits in adaptive functioning. R. 29. Through TASC, a developmental disability adult day program, Plaintiff participates in "supported employment," and receives help with, *inter alia*, transportation, difficulties encountered with work supervisors, and scheduling. R. 29, 55-57, 332.

The record also contains information from various doctors who had examined Plaintiff after she left school. Although intellectual functioning tests were not administered during a psychological evaluation conducted in January 2003, John Sappington, Ph.D., found

Plaintiff was functioning within the range of mild mental retardation with accompanying deficits in adaptive functioning. R. 24 (citing R. 257-60). The ALJ discounted Dr. Sappington's diagnosis because intellectual functioning tests were not administered, R. 24, but failed to acknowledge Dr. Sappington's statement that Plaintiff was not retested "as her history of Mild Mental Retardation is documented and is considered an accurate estimate of her intellectual functioning." R. 258. Again in 2009, Kenneth Azar, a medical doctor with Serenity Behavioral Health Systems, diagnosed Plaintiff with, *inter alia*, mild mental retardation. R. 24 (citing R. 303-09.) Likewise, Stanley Greenberg, D.O., at Serenity Behavioral Health Systems diagnosed Plaintiff with mild mental retardation, R. 304, 305, 306, 307.

The record also contains the results of a consultative examination performed by John C. Whitley, III, Ph.D., in November of 2009. R. 27, 310-15. As a general rule, the opinion of a one-time examiner is not entitled to great weight and may be discredited by other evidence in the record. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160-61 (11th Cir. 2004) (*per curiam*). However, as part of the duty to develop a full and fair record, the ALJ must "make clear the weight accorded to the various testimony considered." Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981). Specifically, the ALJ is required to "state specifically the weight accorded to each item of evidence and why [s]he reached that decision" since, "in the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." Id.

Although Dr. Whitley found Plaintiff tested at a full scale IQ of 56, he stated the "results are an underestimation of the claimant's true abilities, and are incongruent with her

reported level of functioning and her occupational status at the time of his evaluation." R. 27 (citing R. 313-14.) Problematically, however, Dr. Whitley reviewed only a non-descript "Disability Questionnaire" in preparing his report, R. 311, and he qualifies at least four times in his report that he did not have access to Plaintiff's academic records, medical records, or other documentation, R. 312, 313, 315. In essence, Dr. Whitley suggested Plaintiff may have been malingering or not putting forth her best efforts, but he admittedly had nothing to which to compare her performance during his onetime examination of her.

Had Dr. Whitley had access to Plaintiff's prior records, he may have seen that his observation regarding Plaintiff working at a very slow pace, R. 313, was consistent with observations during the 1987 examination of Plaintiff at her school where it was observed she "worked extremely slow on language-related tasks," R. 253. Similarly, Dr. Whitley stated, "There were no records indicating a history of any psychotic symptoms," R. 315, but in May 2009, Dr. Azar diagnosed Plaintiff as having major depression with psychosis, R. 308. Dr. Whitley also acknowledged Plaintiff reported a history of hospitalizations for alcohol use and attempted suicide, "although there were no records to review." R. 315. Dr. Azar stated in his report that Plaintiff had two hospitalizations at Georgia Regional Hospital for overdoses and that she had been treated briefly at a mental health clinic in Wilkes County. R. 308.

Moreover, although both Dr. Sappington and Dr. Azar discussed Plaintiff's participation in the Georgia TASC program, R. 257, 308, Dr. Whitley made no mention of TASC, a program which, as described above, is a day program for adults with developmental disabilities and an IQ score of sixty-nine or below that provides support for the activities of daily living of its participants. Dr. Whitley also concluded that Plaintiff would have the ability to follow multiple-step instructions and possibly multitask, and she could "obviously"

maintain her own schedule.[4] R. 315. However, the ALJ ultimately limited Plaintiff to simple one and two step tasks. R. 28. Thus, the ALJ rejected Dr. Whitley's assessment of Plaintiff's abilities regarding concentration, persistence, and pace but adopted wholesale his opinion that Plaintiff's IQ testing was invalid due to poor effort, which was admittedly made without having access to Plaintiff's collateral records. The ALJ's explanation for using only select portions of Dr. Whitley's opinion was simply, "I have given some weight to the reported findings of Dr. Whitley." R. 31.

A valid IQ score is pivotal to Plaintiff's disability application. Plaintiff produced copious evidence of some type of mental impairment dating back to her school days and continuing through to her current enrollment in the Georgia TASC program. When Plaintiff's non-attorney representative offered Plaintiff's school records at the hearing on June 16, 2011, R. 45-47, Dr. Whitley had already conducted his consultative examination without having reviewed any such records. Upon accepting the records from Ms. Garrard, the ALJ appears to reference the need for information beyond the diagnostic impressions offered, R. 46, but the record does not reflect this gap was addressed prior to the ALJ issuing her decision.

Rather, despite several opinions that Plaintiff functions in the mild mental retardation range and receives help with activities of daily living, and despite rejecting some portions of the consultative examination by Dr. Whitley but accepting others without a clear explanation as to why, the ALJ determined the record did not contain valid testing to substantiate Plaintiff's claimed level of intellectual deficits. Simply put, the evidentiary gap is clear, and the ALJ should have more fully developed the record on this point. See Murphy v. Colvin,

---

[4]Help with scheduling was one of the specific activities named with which TASC provides Plaintiff assistance. R. 56.

CV-13-S-1518-E, 2014 WL 2694187, at *3 (N.D. Ala. June 12, 2014) ("[B]ecause the consultative physician's opinion was internally inconsistent, it cannot constitute substantial evidence to support the ALJ's finding of no disability. Remand is warranted for the ALJ to gather additional medical evidence to support his findings, whether by recontacting [the consultative examiner] to resolve the inconsistencies . . . or by ordering an additional consultative examination, or by other means."); see also Rease v. Barnhart, 422 F. Supp.2d 1334, 1375 (N.D. Ga. 2006) (finding a failure to fully and fairly develop the record as to a claimant's medical and psychological records where, on remand from appeals council for comprehensive evaluation, opinion offered by psychologist expressly stated was given with regard for any physical limitations).

### 2. The ALJ's Decision Is Internally Inconsistent as to Plaintiff's "Other" Impairments Relevant to the Listing 12.05 Analysis.

In addition to concluding that Plaintiff did not have a valid IQ score to meet a Listing, the ALJ determined that Plaintiff did not meet the additional requirement of 12.05(C) establishing evidence of another physical or mental impairment that imposed another significant work-related limitation of function, i.e., a severe impairment. R. 28. However, at step two of the sequential evaluation process, the ALJ determined Plaintiff had two severe impairments: borderline intellectual functioning and obesity. R. 23. These findings at steps two and three of the sequential process conflict, and despite the Commissioner's attempt to explain why Plaintiff's obesity does not meet the additional impairment prong, (Comm'r's Br., p. 12), the ALJ failed to reconcile the inconsistency in her findings.

To satisfy the additional impairment prong of Listing 12.05(C), Plaintiff needs to show that the impairment "significantly limits [her] physical or mental ability to do basic work activities, i.e., is a 'severe' impairment(s), as defined in §§ 404.1520(c) and 416.920

(c)." Willard, 2014 WL 1664300 at *4 (citing Listing 12.00(A).) As set forth below, the severity test is not stringent.

A severe impairment significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a) & 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R.§§ 404.1521(b) & 416.921(b). Examples include:

(1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2) Capacities for seeing, hearing, and speaking;

(3) Understanding, carrying out, and remembering simple instructions;

(4) Use of judgment;

(5) Responding appropriately to supervision, co-workers and usual work situations; and

(6) Dealing with changes in a routine work setting.

20 C.F.R.§§ 404.1521(b) & 416.921(b). Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that such impairment significantly affects her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*).

The severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (describing severity test as a "reasonable administrative convenience designed to screen out groundless claims"). In fact, the Eleventh Circuit describes step two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*)

(citing Brady, 724 F.2d at 920). Under this test, "an impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of [her] age, education or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

Here, when the ALJ stated during the analysis of Listing 12.05(C) that Plaintiff did not have a physical impairment imposing an additional and significant work-related limitation of function, she directly contradicted her earlier finding at step two of the sequential process that Plaintiff's obesity was a severe impairment. Compare R. 23 with R. 28. The ALJ's discussion of Plaintiff's obesity during the step three analysis was only to say that it did not meet the requirements of a Listing because there was not another impairment severe enough to independently satisfy the requirement of a Listing. R. 28 (citing SSR 02-1p). Plaintiff does not argue here that her obesity meets a Listing but does assert that as a severe impairment, it satisfies the other impairment requirement of Listing 12.05(C). See Pl.'s Br., p. 12.

The Commissioner attempts a post-hoc explanation that the ALJ did not mean what she said when obesity was identified as a severe impairment. Comm'r's Br., p. 12. However, this Court cannot now engage in an administrative review that was not done in the first instance at the administrative level, but rather must examine the administrative decision

as delivered. See Martin v. Heckler, 748 F.2d 1027, 1031 (5th Cir. 1984) (noting it to be "inappropriate on judicial review for the first time to apply administrative criteria not themselves considered by the [Commissioner]"). Because the ALJ did not explain or even address the discrepancies in the two conflicting findings, they are not supported by substantial evidence.[5] Bloodsworth, 703 F.2d at 1239.

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** pursuant to sentence four of 42 U.S.C. § 405(g), that the Commissioner's final decision be **REVERSED** and that the case be **REMANDED** to the Commissioner for further consideration in accordance with this opinion.

SO REPORTED and RECOMMENDED this 4th day of September, 2014, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

---

[5]This error cannot be considered harmless, because if Plaintiff is found to have a valid full scale IQ score of sixty through seventy, the additional impairment prong of Listing 12.05(C) could be dispositive of Plaintiff's disability claim. Because the Court is recommending the case be remanded, it need not address Plaintiff's additional argument that her depression is a severe impairment. (Pl.'s Br., p. 12.) Of course, on remand, the severity analysis on all of Plaintiff's impairments should be conducted in accordance with the Eleventh Circuit case law outlined above regarding severe impairments.

Likewise, the Court need not address Plaintiff's second assertion of error regarding the formulation of her RFC. Cf. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985) (*per curiam*) ("Because the 'misuse of the expert testimony alone warrants reversal,' we do not consider the appellant's other claims.") As explained above, if a claimant meets or equals a Listing, the Commissioner must find the claimant disabled without regard to the claimant's age, education, or previous work experience. 20 C.F.R. §§ 404.1520(d) & 416.920(d). Of course, should it be determined on remand that Plaintiff does not meet a Listing and the sequential process continues past step three, the determination of Plaintiff's RFC must be done in accordance with the applicable regulations and case law.